IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff<br><br>v.<br><br>**ALL ASSSETS AND FUNDS ON DEPOSIT OR HELD IN OFFSHORE INVESTMENT ACCOUNT AT SUN LIFE FINANCIAL INVESTMENTS (BERMUDA) LTD., CONTRACT NUMBER 28-2873-017053 IN THE NAME OF SILVIA BEATRIZ PEREZ-CEBALLOS**<br>Defendant | § § § § § § § § § | CIVIL CASE NO. C-18-CV-4 |

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, Plaintiff, files this action for forfeiture against all funds and assets on deposit or held in offshore investment account at Sun Life Financial Investments (Bermuda) Ltd, contract number 28-2873-017053 (the Bermuda account) in the name of Silvia Beatriz PEREZ-Ceballos, located at, 11 Victoria Street, Hamilton HM 11, Bermuda and alleges on information and belief that:

### NATURE OF ACTION

1. This is a civil action in rem brought to enforce the provisions of: (a) 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property; (b) 18 U.S.C. § 981(a)(1)(B)(iii) which provides for the forfeiture of any property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an

offense against a foreign nation, or any property used to facilitate such an offense, if the offense would be punishable under the laws of the United States by imprisonment for a term exceeding 1 year, if the act or activity constituting the offense had occurred within the jurisdiction of the United States; and (c) 18 U.S.C. §981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. This court has *in rem* jurisdiction over Defendant Property under 28 U.S.C. § 1355(b) and §1355(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANT PROPERTY

3. The property subject to forfeiture are all funds and assets on deposit or held in offshore investment account at Sun Life Financial Investments (Bermuda) Ltd, contract number 28-2873-017053 (the Bermuda account) in the name of Silvia Beatriz PEREZ-Ceballos (hereinafter referred to as "Defendant Property"). Defendant Property consists of approximately $1,900,000.00.

## FACTS

4. Jose Manuel SAIZ-Pineda ("SAIZ-Pineda") was the Secretary of Administration and Finance for Tabasco from January, 2007 through December, 2012. Prior to his appointment as the Secretary of Administration and Finance, SAIZ-Pineda was employed at various companies

2

in the private sector where worked alongside co-conspirator Martin Alberto MEDINA-Sonda ("MEDINA-Sonda"). During his tenure in the private sector, SAIZ-Pineda provided consultation to various states and municipalities in Mexico, affording him the opportunity to experience government service and become acquainted with the eventual Governor of Tabasco, Andres Grainer Melo ("Grainer"). Granier entered office as the Governor of the state of Tabasco in January, 2007. SAIZ-Pineda assumed his government position as Secretary of Administration and Finance for the state of Tabasco at the same time and was appointed by Granier.

5. As the Secretary of Administration and Finance for the state of Tabasco, SAIZ-Pineda earned an annual salary of approximately $80,000 USD. The income for high-ranking state officials in Tabasco does not exceed $150,000 USD annual salary. For six years, at the highest pay grade of state government, the most income that SAIZ-Pineda could have legitimately earned would have been approximately $900,000 USD.

6. In late 2012, the federal prosecutor's office, Procuraduria General de la Republica ("PGR") of Mexico, and the Tabasco Attorney General's Office (Fiscalia General Del Estado "FGE") initiated an investigation regarding the state debt of Tabasco, which had risen to over one billion pesos (approximately $100 million USD) during the tenure of the Granier administration. According to the new administration, there are state funds that are unaccounted for that equal an equivalent of approximately $190 million USD.

7. SAIZ-Pineda, along with his co-conspirators, created offshore personal holding companies, trusts, and domestic shell companies to facilitate entry of proceeds into the United States financial system. SAIZ-Pineda, along with his co-conspirators, used the shell companies

3

to establish investment accounts at various financial institutions in the United States. Funds from the United Mexican States, as well as Singapore, were then transferred into the investment accounts in an attempt to legitimize proceeds derived from the theft of state funds from Tabasco.

8. Information in this investigation has been received as a result of a Mutual Legal Assistance Treaty (MLAT) from the state of Tabasco, as well as from various financial institutions, title companies, and open sources. Analysis of the information led to the discovery of the Defendant Property.

9. SAIZ-Pineda ended his government tenure as the Secretary of Finance and Administration on December 31, 2012. On May 22, 2013, approximately 88,560,134 Mexican pesos (approximately $8 million USD) was seized by Mexican authorities from a residence associated with Marlis Cupil-Lopez, the former secretary of SAIZ-Pineda. This seizure led to the execution of a search warrant at the office of SAIZ-Pineda, located at Sanchez Magallanes #1113, Villahermosa, Tabasco, where authorities subsequently seized documentation corroborating the money laundering scheme.

10. On May 30, 2013, the U.S. visas of SAIZ-Pineda and Granier were revoked at the request of Mexican authorities due to flight risk regarding their ongoing investigation. On June 8, 2013, SAIZ-Pineda was stopped at the Pharr, Texas Port of Entry by the Department of Homeland Security. SAIZ-Pineda was denied entry into the United States and returned to Mexico, where he was arrested by Mexican authorities and charged with illegal enrichment.

11. On June 11, 2013, the U.S. visa of Silvia Beatriz PEREZ-Ceballos ("PEREZ-Ceballos"), the wife of SAIZ-Pineda, was revoked at the request of Mexican authorities, and SAIZ-Pineda was publically implicated in the public corruption investigation being conducted by

the state of Tabasco. On or about June 24, 2013, Granier was taken into custody on charges of money laundering and tax evasion.

12. In October, 2014, MEDINA-Sonda was arrested in Quintana Roo, Mexico, on charges of kidnapping his three minor children. While incarcerated, in December, 2014, MEDINA-Sonda was additionally charged by Mexican authorities with money laundering stemming from a money seizure that occurred in November, 2007 and was convicted of the money laundering charges in April 2017 and sentenced to 12 years imprisonment. MEDINA-Sonda is also alleged to have plotted the murder of his former wife in March 2017. To date, both SAIZ-Pineda and Granier remain incarcerated in Tabasco while awaiting adjudication.

13. On June 14, 2013, approximately one week after the arrest of SAIZ-Pineda, PEREZ-Ceballos established savings account number xxxxxx3395 at JP Morgan Chase Bank in Houston, Texas. This banking relationship granted PEREZ-Ceballos access to an offshore contract at Sun Life Financial Investments (Bermuda) Ltd. (Defendant Property).

14. On October 11, 2013, PEREZ-Ceballos completed the application for the Sun Life Financial Investments (Bermuda) Ltd brokerage account (Defendant Property) sold through JPMorgan Chase Securities LLC. On the Sun Investor application, the federal criminal investigation uncovered that PEREZ-Ceballos made numerous false statements including her mailing address, her residence, her source of wealth, and her status as a politically exposed person. Further, PERZ-Ceballos also provided forged UBS statements, having redacted SAIZ-Pineda's name. The initial investment amount by PEREZ-Ceballos was listed as $1,910,000.00 USD.

15. On October 16, 2013, approximately $1,972,740.51 USD was transferred by

PEREZ-Ceballos from a joint tenant account held at UBS Financial Services in the name of PEREZ-Ceballos and SAIZ-Pineda to the individual owner savings account numberxxxxxx3395 held at JPMorgan Chase Bank by PEREZ-Ceballos. Ten days later, on October 25, 2013, PEREZ-Ceballos transferred the funds from the savings account to the newly established account at Sun Life Financial Investments (Bermuda) Ltd (Defendant Property).

16. Tracing analysis by federal law enforcement agents uncovered that the Defendant Property was funded by the JPMorgan Chase account. The JPMorgan Chase account was funded by a UBS account in the names of PEREZ-Ceballos and SAIZ-Pineda. The UBS account was funded by HSBC accounts in the names of PEREZ-Ceballos and SAIZ-Pineda. Furthermore, Defendant Property was accumulated during the time that PEREZ-Ceballos' husband held a senior government position for the Mexican state of Tabasco. PEREZ-Ceballos gained sole possession of the funds sent to JPMorgan Chase Bank, and ultimately Sun Life Financial Investments (Bermuda) Ltd, (Defendant Property) by transferring the funds previously held at UBS Financial Services in a joint tenant account with her spouse, who at the time had already been incarcerated in Mexico for his involvement in a money laundering and embezzlement scheme being investigated by authorities, to an individual owner/participant account. PEREZ-Ceballos achieved this transfer without raising due diligence suspicion and without her husband's signature by physically altering UBS Financial Services statements, removing SAIZ-Pineda's and providing said statements as proof of account ownership to JP Morgan Chase. PEREZ-Ceballos not only transferred the ill-gotten gains to an overseas hiding place, but she also successfully "washed" the money by concealing the true origin of funds and any connection to SAIZ-Pineda, who was incarcerated

17. On April 26, 2017, a federal grand jury in the Southern District of Texas, Corpus Christi, Texas, returned a true bill indictment for SAIZ-Pineda, PEREZ-Ceballos, and MEDINA-Sonda. They were charged in a two-count indictment with a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h) and a bank fraud conspiracy, in violation of Title 18, United States Code, Sections 1344 and 1349. In addition to the criminal indictment, criminal forfeiture included seven real properties, to include the Defendant Property, six financial accounts, and a personal money judgment for $50 million USD. In October 2017, PEREZ-Ceballos was convicted of a bank fraud conspiracy after a federal jury trial. SAIZ-Pineda and MEDINA-SONDA remain in custody in Mexico.

18. During the jury trial in PEREZ-Ceballos case, PEREZ-Ceballos admitted under oath that she falsified the UBS documents, redacting SAIZ-Pineda's name, to make it appear that she was the sole owner of the account. PEREZ-Ceballos also falsely testified at trial that the Defendant Property was from her savings in Mexico. Federal law enforcement agents have uncovered evidence regarding PEREZ-Ceballos' Mexican bank accounts which clearly show joint monies of PEREZ-Ceballos and SAIZ-Pineda.

19. The Defendant Property is subject to forfeiture pursuant to: (a) 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property; (b) 18 U.S.C. § 981(a)(1)(B)(iii) which provides for the forfeiture of any property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, or any property used to facilitate such an offense, if the offense

would be punishable under the laws of the United States by imprisonment for a term exceeding 1 year, if the act or activity constituting the offense had occurred within the jurisdiction of the United States; and (c) 18 U.S.C. §981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than 35 days from the date this complaint is sent in accordance with 18 U.S.C. § 985 and Rule G(4)(b).

An answer or motion under Fed. R.Civ.P. 12 must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this complaint.

## PRAYER

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Property in favor of the United States of America and for such costs and other relief to which the United States of America may be entitled.

Respectfully submitted,

ABE MARTINEZ
Acting United States Attorney

By: s/ Julie K. Hampton
    JULIE K. HAMPTON
    Assistant United States Attorney
    State Bar No. 24032269
    Federal Bar No. 431286
    800 N. Shoreline Blvd., Suite 500
    One Shoreline Plaza
    Corpus Christi, Texas 78401
    (361) 888-3111

## VERIFICATION

I, Patricia Trevino, a special agent with the Drug Enforcement Administration, hereby affirm and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief.

*[signature]*
Patricia Trevino
Special Agent, DEA

Sworn and subscribed before me, the undersigned authority, on this __5__ day of January, 2018.

*[signature]*
Notary Public in and for the State of Texas

9-25-2020
My commission expires:

*[Notary seal: PENNY FOLLODER - ID #12667243-9, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 09-25-2020]*

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem was mailed via certified mail or certified international mail, return receipt requested to:

1. JOSE MANUEL SAIZ-PINEDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs.
2. MARTIN ALBERTO MEDINA-SONDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs.
3. SILVIA BEATRIZ PEREZ-CABALLOS, through attorney F. Andino Reynal, The Esperson Building, 808 Travis, Suite 1553, Houston, Texas 77002.
4. Celso Perez-Ceballos, 2706 Lytham, Sugarland, Texas 77479.

on this the 5th day of January, 2018.

s/ Julie K. Hampton
JULIE K. HAMPTON
Assistant United States Attorney
